COMMONWEALTH vs. MICHAEL J. DELANEY.

Worcester.     September 11, 1979. — October 4, 1979.

Present: GRANT, BROWN, & DREBEN, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Presump-
tion of innocence. *Jury and Jurors. Constitutional Law*, Self-in-
crimination.

Where a defendant in a criminal case did not take the stand and chose
to rest at the close of the Commonwealth's case, the judge erred in
instructing the jury that a grand jury "only hear one side of the
case" and the petit jury "hear both sides of the story" and by
further inviting comparisons between the respective functions of
the two juries, and those instructions, taken in conjunction with the
judge's statement that "a defendant has a constitutional right not
to incriminate himself," required reversal of the defendant's con-
viction. [408-410]

INDICTMENT found and returned in the Superior Court
Department on November 10, 1978.

The case was tried before *Beaudreau*, J.

The case was submitted on briefs.

*Alice L. Litter* for the defendant.

*John J. Conte*, District Attorney, & *Daniel F. Toomey*,
Assistant District Attorney, for the Commonwealth.

GRANT, J. The indictment in this case is laid under
G. L. c. 266, § 16. The evidence at trial was such that it
must have been obvious to the jury that the defendant
was the only person in a position to contradict any of the
Commonwealth's witnesses. He did not take the stand
and chose to rest at the close of the Commonwealth's case.
The jury convicted, and the defendant appealed, claiming
numerous errors in the charge. We quote or summarize
the salient features of the charge which are material to
a proper disposition of the case as it has been argued to
us.

"The fact that a person has been arrested or indicted by a Grand Jury isn't the slightest evidence of guilt. As you know, the Grand Jury is composed of anywhere from thirteen to twenty-three people like yourselves, but they only hear one side of the case, the government's side; if they determine there is enough evidence on the government's side, then they indict the person; and later on that person is tried before a jury such as yourselves, and *you hear both sides of the story.* Now you can see the fact that a person is indicted and arrested isn't the slightest evidence of guilt" (emphasis supplied). The foregoing was followed immediately by unexceptionable instructions as to the meaning and effect of the presumption of innocence. The latter instructions were succeeded by the portions of the charge devoted to the requirement of proof beyond a reasonable doubt and the meaning of "reasonable doubt."[1]

The judge then proceeded to the only remaining portion of the charge which is material for present purposes, which was as follows: "Now there is another principle of law here that has to be given, because I am sure you all noticed the defendant didn't take the stand here in his own behalf. In Massachusetts we have a statute that says that a defendant in the trial of a criminal proceeding, shall, at his own request and not otherwise, be allowed to testify. But his neglect or refusal to testify on the stand

---

[1] The defendant excepted to the following instruction included in this portion of the charge: "If an unreasonable doubt or a mere possibility of innocence was sufficient to prevent a conviction, then practically every criminal would be free to prey upon the community, and such a rule would be wholly impractical, and would break down the forces of law and make the lawless supreme." The quoted language was taken almost verbatim from instructions approved in *Commonwealth* v. *Madeiros,* 255 Mass. 304, 307, 316 (1926). We think all the defendant's objections to the use of that language are answered by the discussion in *Commonwealth* v. *Williams,* 378 Mass. 217, 232, 233-235 (1979), which was decided after the defendant's brief was filed in this court.

shall not create any presumption against him.[2] Apart from that statute, *a defendant has a constitutional right not to incriminate himself.* The defendant in a criminal case cannot be compelled to testify at his trial. He may testify if he elects to do so. But if he does not choose to do so, he may not testify. It is his choice and his choice alone. If he exercises that right not to testify, as the defendant did in this case, then no inferences unfavorable to the defendant can be drawn by the jury by reason of his failure to testify" (emphasis supplied).

The defendant preserved exceptions to the portions of the charge which have been italicized above and urged that "the gist of [the] charge could easily be that [the jury] *might infer that [the defendant] did not testify because he did not want to incriminate himself.*" No further instructions were given.

1. A judge may properly instruct a jury that the fact that a person is in custody or has been indicted "isn't the slightest evidence of guilt," so long as he also gives proper instructions as to the meaning and effect of the presumption of innocence. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 316 (1926). Other of the present instructions concerning the irrelevance of an indictment suffer from several shortcomings. Most obvious, instructions that a grand jury "only hear one side of the case" and that "you hear both sides of the story" should not be given in any case in which the defendant rests without offering any evidence.

We also think the present instructions invited confusion as to the respective functions of grand and petit juries and as to the quantum of proof by which the latter are to be governed in performing their allotted task. A comparison between disparate functions was invited by the references to a "jury such as yourselves" and to grand jurors as "people like yourselves," but the jury were not told that it is not the function of a grand jury to determine guilt or innocence. See *United States* v. *Faulkner*,

---

[2] See G. L. c. 233, § 20, Third.

488 F.2d 328, 330-331 (5th Cir.), cert. denied, 474 U.S. 914 (1974); *United States* v. *Garcia,* 562 F.2d 411, 416-417 (7th Cir. 1977). The instructions that "if [the grand jury] determine there is enough evidence on the government's side, then they indict the person" and that "later on that person is tried before a jury such as yourselves, and you hear both sides of the story," when considered by themselves, may have been understood by the jurors as an authorization to convict if they should be satisfied that the government had introduced enough evidence to warrant a finding of guilt. Those same instructions, when considered in conjunction with the later instructions as to the government's burden of proving the defendant guilty beyond a reasonable doubt, may have created an impression that the grand jury had based its determination on proof beyond a reasonable doubt and that the only function of the present jurors was to weigh that determination in light of whatever evidence the defendant might choose to present (in this case none), an impression which may not have been entirely dispelled by the ensuing advice that "you can see the fact that a person is indicted and arrested isn't the slightest evidence of guilt."

2. Nothing in the charge belittled the defendant's privilege not to take the stand (contrast *Brown* v. *Commonwealth,* 335 Mass. 476, 481, 482 [1957]), nor is a reversal required solely by reason of the fact that the judge explained to the jury that the privilege was grounded in part on the defendant's constitutional right not to incriminate himself. See *Commonwealth* v. *Morrissey,* 351 Mass. 505, 515 n.5 (1967); *Commonwealth* v. *Sneed,* 376 Mass. 867, 871 n.1 (1978); *Commonwealth* v. *Barrett,* 6 Mass. App. Ct. 952, 953 (1978). The problem arises from the conjunction of the instructions that "you hear both sides of the case" and that "a defendant has a constitutional right not to incriminate himself" and the possibility that the corrosive effect of that conjunction may not have been neutralized by the further instruction that "[i]f [the defendant] exercises that right not to testify . . . then

no inferences unfavorable to the defendant can be drawn by the jury by reason of his failure to testify." The problem is exacerbated by the fact, already adverted to, that the defendant was the only person in a position to contradict any of the Commonwealth's witnesses. It cannot be denied that the conjunction suggested that "the defendant [had not taken the stand] because he feared what the jury's appraisal of his direct testimony was likely to be" or that "the charge could [have been] understood by the jury as a criticism of the defendant for failing to take the stand." *Commonwealth* v. *Goulet*, 374 Mass. 404, 411, 413 (1978).[3] Although the evidence of guilt was strong, we cannot say with any assurance that the verdict was not influenced by the suggestion or by the criticism. Compare *Commonwealth* v. *Harlow*, 110 Mass. 411, 412 (1872).

Accordingly, the judgment must be reversed and the verdict set aside.

*So ordered.*

---

[3] The severity of the problem is not ameliorated by the obvious fact that the suggestion and criticism were unintentional. *Commonwealth* v. *Sneed*, 376 Mass. at 871.