COMMONWEALTH vs. JAMES COSTELLO.

Suffolk. March 6, 1984. — July 5, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, & LYNCH, JJ.

*Homicide. Delinquent Child. Jurisdiction,* Delinquent child, Transfer hearing. *Practice, Criminal,* Transfer hearing, Disclosure of evidence, Instructions to jury, Variance.

At a transfer hearing pursuant to G. L. c. 119, § 61, to determine whether a juvenile should be tried as an adult, the judge was warranted in finding that, based upon clear and convincing evidence, including the serious nature of the offenses with which the defendant was charged, the defendant presented a significant danger to the public and was not amenable to rehabilitation as a juvenile. [395-397]

At a transfer hearing pursuant to G. L. c. 119, § 61, to determine whether a juvenile should be tried as an adult, the Commonwealth was not required to produce expert psychiatric testimony to prove that the defendant was not amenable to rehabilitation. [396-397]

A criminal defendant was not entitled to a mistrial on the ground that, prior to a police officer's testimony that the defendant was "running" with a certain individual, the prosecutor had only informed defense counsel that the officer would testify that the defendant was "with" that individual, where the meaning of the term "running," taken in context, was equivocal and where the defendant made no showing of how his case was prejudiced by the statement. [397-398]

A criminal defendant was not entitled to a mistrial on the ground that the prosecutor delayed in disclosing certain police laboratory test data where the results of the tests, apparently necessitated by the discovery of new evidence, were disclosed in a timely fashion to defense counsel, where the prosecution played an apparently blameless role in the delay, and where there was no prejudice to the defendant's case. [399-400]

At a criminal trial, the judge's discussion of the defendant's right not to take the stand and his brief mention, during this discussion, of the defendant's privilege against self-incrimination did not, in the context of his entire charge to the jury, create a risk that the charge could have been understood by the jury as a criticism of the defendant for failing to take the stand. [400-401]

A judge's charge with respect to the meaning of proof beyond a reasonable doubt was adequate even though it included a statement, of which this

court has disapproved, that "a reasonable doubt is a doubt for which one could give a reason." [401-402]

At the trial of an indictment charging that the defendant had committed armed assault in a dwelling "with intent to commit a felony, to wit: robbery," the judge did not err in instructing the jury that the intended felony underlying the armed assault could be either robbery or murder, where the specification in the indictment of the particular "intended" felony was surplusage, where the indictment correctly specified the essential elements of the crime, and where the additional felony mentioned in the judge's instructions did not prejudice the defendant. [402-404]

At the trial of indictments for murder in the first degree and other serious crimes, there was no error in the judge's refusal to instruct the jury that the Commonwealth had the burden of proof on the subject of the defendant's voluntary intoxication. [404-405]

At the trial of indictments for murder in the first degree and other serious crimes, the judge did not err in refusing to instruct the jury that the defendant's age was to be considered as a mitigating factor in their deliberations. [405]

INDICTMENTS found and returned in the Superior Court Department on December 21, 1981.

The cases were tried before *Ronan, J.*

*Thomas G. Shapiro* for the defendant.

*John A. Kiernan,* Assistant District Attorney (*John N. Tramontozzi,* Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. This case involves the same crime as our decision in ·*Commonwealth* v. *Pennellatore, ante* 382 (1984), and the factual circumstances underlying the incident at issue need not be repeated here. See *Commonwealth* v. *Pennellatore, supra* at 384-385. The defendant, a juvenile, was tried as an adult after a District Court judge ordered the case transferred from the Juvenile Session of the West Roxbury District Court to the Superior Court. G. L. c. 119, § 61. The defendant was convicted of murder in the first degree, armed robbery, and armed assault in a dwelling with intent to commit a felony, and was sentenced to concurrent life terms on the latter two convictions, to be served from and after the mandatory life term on the conviction of murder in the first degree.

The defendant's appeal rests on three general grounds. First, he contends that the subsidiary findings of the judge of the Juvenile Session were insufficient to warrant the transfer of the case to the Superior Court. Second, the defendant raises a number of arguments relating to nondisclosure of evidence by the prosecution, which will be spelled out in greater detail below. Finally, the judge's charge to the jury is criticized in a number of respects, each one relating to a possibly inappropriate use of a phrase or term in the judge's charge. After considering each of the defendant's numerous arguments, we find no error. Nor do we consider this an appropriate case for the invocation of our powers under G. L. c. 278, § 33E, and therefore we affirm the judgments of the lower court.

1. Review of the issue whether the transfer of the defendant's case from the Juvenile Session to the Superior Court was proper was initiated by a motion by the defendant to dismiss the indictments, which was denied by a Superior Court judge. The defendant then filed a petition for extraordinary relief in this court, which was denied by a single justice, the denial being accompanied by a detailed review of the defendant's factual circumstances. Following this, the full court denied a stay of the pending proceedings in the Superior Court.

In order for a juvenile offender between the ages of fourteen and seventeen to be tried as an adult, it must be determined that he falls into one of two categories: (1) he must be a child who was previously committed to the Department of Youth Services and who is now charged with having committed a crime which would be punishable by imprisonment in the State prison if he were an adult; or (2) he must be charged with having committed an offense involving the infliction or threat of serious bodily harm. G. L. c. 119, § 61. In turn, there must be a finding that probable cause exists regarding whether the juvenile has committed the offense charged. *Id.* In the instant case, the defendant's situation qualified under both categories, and he does not challenge the findings of probable cause on the complaints of murder, armed robbery, and armed assault in a dwelling.

In addition to satisfying one of the two statutory categories described above, a judge must also make two written findings, based upon clear and convincing evidence, that: "(1) the child presents a significant danger to the public (this danger being demonstrated by the nature of the offense and the child's past record of delinquent behavior, if any); and (2) the child is not amenable to rehabilitation as a juvenile." *Two Juveniles* v. *Commonwealth,* 381 Mass. 736, 740 (1980). G. L. c. 119, § 61. These two written findings must be supported by subsidiary findings, which should be derived from consideration of five statutorily delineated "factors." G. L. c. 119, § 61.[1] "Even though the statute requires that the two critical findings be written, its only affirmative requirement concerning the enumerated factors is that they be considered." *Two Juveniles* v. *Commonwealth, supra* at 741. "There is no specific requirement that a judge weigh these factors in a certain manner or achieve some predesigned balance." *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 282 (1976). Instead, our long-standing policy has been to entrust a judge with "considerable discretion, within this statutory framework, to determine whether a child should be treated as an adult." *Id.*

The defendant argues that the Juvenile Session judge's subsidiary findings were not sufficient to establish the judge's ultimate finding that he was not amenable to rehabilitation, and he charges the judge with relying primarily on the factor of the serious nature of the offense. The single justice rejected this argument and emphasized the varied nature of the subsidiary findings made by the judge in reaching his conclusion that the defendant was not amenable to treatment as a juvenile.[2]

---

[1] General Laws c. 119, § 61, as amended by St. 1977, c. 829, § 11, requires that, if the judge finds probable cause, he "shall then consider, but shall not be limited to, evidence of the following factors: (*a*) the seriousness of the alleged offense; (*b*) the child's family, school and social history, including his court and juvenile delinquency record, if any; (*c*) adequate protection of the public, (*d*) the nature of any past treatment efforts for the child, and (*e*) the likelihood of rehabilitation of the child." See *Two Juveniles* v. *Commonwealth, supra* at 740-741.

[2] The Juvenile Session judge's subsidiary findings, as summarized by the single justice, included the following: "the juvenile had a poor attendance

It was not error for the judge to attach substantial significance to the seriousness of the offense, as this does bear on both the danger to the public and an individual's prospects for rehabilitation. Seriousness of the offense is also included as an element in the statute, G. L. c. 119, § 61, and there is considerable precedent in favor of according this factor significant weight in the juvenile transfer process. *Two Juveniles* v. *Commonwealth, supra* at 743. *A Juvenile* v. *Commonwealth, supra* at 282. However, we also take note of the judge's consideration of all the other "enumerated" factors outlined in the statute, as well as previous foster care efforts made by the Commonwealth. We therefore find no error in the Juvenile Session judge's decision that the defendant should be tried as an adult. Further, we do not agree with the defendant's suggestion that the Commonwealth was required to produce expert psychiatric testimony to prove that the defendant was not amenable to rehabilitation. There is no requirement in juvenile transfer proceedings that the Commonwealth produce such testimony, see *Commonwealth* v. *Cole,* 380 Mass. 30, 35-38 (1980), nor has it even been resolved whether the Commonwealth could compel such an examination in this context, see G. L. c. 123, § 15.

2. We next consider the defendant's arguments related to alleged failures by the prosecutor to disclose inculpatory evidence prior to trial. The first allegation concerns testimony by the police officer who received a telephone call from the defendant three days after the murder. *Commonwealth* v. *Pennellatore, supra* at 383. During the conversation, the defendant apparently asked the officer if the police were looking for him, to which the officer replied affirmatively. At trial, the officer testified that the defendant then said that he and Phillip Pennellatore "had been running together since the night before and

---

record at school[;] between December, 1978, and November, 1980, he was charged six times with breaking and entering in a dwelling house [footnote omitted]; on November 20, 1980, he was committed to the Youth Services Board; on November 9, 1980, he was placed in a foster home; [i]n February, 1981, he left this foster home without permission, and later he had to be removed from his foster home after his foster mother accused him of stealing her checks and keys. Thus, at the time of this offense the juvenile already was under the supervision of the Department of Youth Services."

that day downtown." The defendant then told the officer where he and Pennellatore could be located, and the officer and his partner subsequently went to that location and arrested them.

The defendant argues that, prior to the police officer's actual testimony on the witness stand, the prosecutor only informed defense counsel that the officer would testify that the defendant told him that he was "with" Pennellatore and had been with him throughout the day. After hearing the use of the word "running" in the officer's testimony, the defendant moved for a mistrial. In his argument in opposition to this motion, the prosecutor informed the judge that he did not know that the officer was going to use that particular word in his testimony. The trial judge denied the defendant's motion, and defense counsel subsequently cross-examined the officer extensively regarding his statement.

The trial judge was correct in denying the defendant's motion for a mistrial. Where the disclosure of evidence by the prosecution is delayed, in order to justify a mistrial there must be a showing of prejudice by defense counsel and a demonstration of "how the granting of a new trial would substantially remedy such prejudice." *Commonwealth* v. *Cundriff,* 382 Mass. 137, 151 (1980), cert. denied, 451 U.S. 973 (1981). The defendant made no showing of how his case was prejudiced by the police officer's statement. As an initial matter, the meaning of the term "running" taken in context is equivocal: its colloquial interpretation as a synonym for "being together with" is no less credible than the defendant's characterization of it as an expression of guilt. Even if the defendant's characterization is accepted, the defendant's opportunity to cross-examine the officer extensively regarding the statement effectively removed any prejudice that may have been created. *Commonwealth* v. *Cundriff, supra. Commonwealth* v. *Gilbert,* 377 Mass. 887, 895 (1979). *Commonwealth* v. *Adrey,* 376 Mass. 747, 755 (1978). This is not a situation where, "given a timely disclosure, the defense would have been able to prepare and present its case in such a manner as to create a reasonable doubt that would not otherwise have existed." *Commonwealth* v. *Wilson,* 381 Mass. 90, 114 (1980). Absent such a showing of prejudice, the defendant's motion for a mistrial was properly denied.

We reach a similar conclusion regarding the defendant's other argument with respect to delayed disclosure of evidence, in this case the results of a phenolphthalein test which was performed on the defendant's sneaker to detect the presence of blood. Prior to trial, a police laboratory analyst performed this test on the bottom of the defendant's sneakers. The results were negative, and this determination was disclosed to the defendant. During trial, a representative of the Commonwealth observed for the first time a stain on the top of one sneaker. A test of this stain proved positive, and the results were made known to the defendant prior to their attempted introduction in evidence. The defendant moved to exclude their admission on account of the lack of notice, and moved in the alternative for a mistrial. These motions were denied. The defendant then requested time to find an expert to consult with, and the trial was suspended for one day. After consultation with his expert the next day, the defendant objected to admission of the test data since the phenolphthalein test was not specific for human blood. The judge then granted a recess to enable the Commonwealth to perform a human precipitant test for blood. The results were positive, and the Commonwealth's expert was permitted to testify to this effect. A second motion for a mistrial by the defendant, brought at the end of the direct examination of the expert, was denied.

The evidence derived from the phenolphthalein test in response to the discovery of the stain during trial was disclosed in a timely fashion to defense counsel, and sufficient time was given for the defendant to respond to this newly discovered evidence. "[I]t is the consequences of the delay that matter, not the likely impact of the nondisclosed evidence," *Commonwealth* v. *Wilson*, 381 Mass. 90, 114 (1980), and the potentially prejudicial effect of the delay in this instance was averted by the opportunity given by the judge to the defendant's expert to respond to the new test results. As was the case with the alleged inculpatory statement discussed above, it is unlikely that an earlier disclosure of the test results would have enabled the defendant "to prepare and present [his] case in such a manner as to create a reasonable doubt that would not otherwise

have existed." *Id.* It is also noteworthy that the prosecution played an apparently blameless role in the delay, since there appears to be no dispute that the evidence was newly discovered and not the result of suppression. This fact is entitled to some weight. See, e.g., *Commonwealth* v. *Cundriff,* 382 Mass. 137, 149 (1980). When it is combined with our conclusion that there was no prejudice, the judge's denial of the defendant's motions for a mistrial was not error.

3. The third and final category of the defendant's major contentions on appeal concerns a number of objections to the judge's instructions to the jury. The defendant focuses initially on the judge's discussion of the defendant's right not to take the stand and his brief mention, during this discussion, of the defendant's privilege against self-incrimination.[3] This purported linkage between the two concepts, it is argued, amounted to an implied criticism of the defendant's decision not to testify. By itself, a statement that the privilege not to testify is based in part on the constitutional right not to incriminate oneself does not merit reversal. *Commonwealth* v. *Morrissey,* 351 Mass. 505, 515 n.5 (1967). *Commonwealth* v. *Powers,* 9 Mass. App. Ct. 771, 773 (1980). Further, although the use of the phrase "self-incrimination" did carry some risks, see, e.g.,

---

[3] The judge instructed the jury as follows: "[A]nother fundamental principle, is the right to remain silent. It is a right to remain silent that you could exercise, I could exercise on this day. On this day, having been exercised by James Costello, I direct your attention to it.

"Now, under the great United States Constitution and its great Bill of Rights, we have all heard the term 'the Fifth Amendment.' You may have heard of the term 'the privilege against self-incrimination.' . . .

". . . .

"Under the United States Constitution and under the Constitution of this Commonwealth, you enjoy that right, and it is personal to you, and so do I, and this day so does James Costello. You shall draw no inference adverse to him because he has exercised his right to remain silent. If you were to draw an inference adverse to him, it wouldn't be a right, and it would certainly be less than sacred.

"Have in mind, also, that it is the Commonwealth who has made the accusation. It is the Commonwealth that must, having made the accusation, prove it. There is no burden, absolutely no burden, on any defendant to disprove anything. Costello does not have to disprove anything. The whole burden of proof is on the Commonwealth."

*Commonwealth* v. *Delaney,* 8 Mass. App. Ct. 406 (1979), any adverse connotations were effectively neutralized by the judge's repeated characterization of the privilege as, simply, a right to remain silent.[4] The judge concluded the discussion with considerable emphasis upon the placement of the burden of proof on the Commonwealth, and this also served to dispel any hint of criticism of the defendant's testimonial privilege.

The defendant also claims that error arose from the instruction that "a reasonable doubt is a doubt for which one could give a reason." The theory behind this argument is that, if such a statement is viewed in isolation, it may have the effect of shifting the Commonwealth's burden of proof to the defendant in its implicit requirement that the jury come up with a "reason" to acquit instead of appropriately placing emphasis on the adequacy of evidence to convict. Although we have disapproved of the use of this phrase on a number of occasions, its use is not necessarily reversible error. *Commonwealth* v. *Thurber,* 383 Mass. 328, 333 (1981). *Commonwealth* v. *Robinson,* 382 Mass. 189, 197-198 & n.8 (1981). *Commonwealth* v. *Bjorkman,* 364 Mass. 297, 307-308 (1973). In this context, "legal sufficiency of the instructions to the jury is to be judged on the basis of the charge as a whole, and not on the basis of limited or isolated portions of it." *Commonwealth* v. *Redmond,* 357 Mass. 333, 342 (1970). *Commonwealth* v. *Leaster,* 362 Mass. 407, 416-417 (1972). When considered in this manner, the judge's instructions[5] immediately preceding the question-

---

[4] The risks inherent in the phrase "self-incrimination" should be avoided in the future. This can easily be done by substituting the phrase, where appropriate, "the right to remain silent." See *Commonwealth* v. *Buiel,* 391 Mass. 744, 747 n.4 (1984).

[5] "The Commonwealth has made three accusations here, serious accusations. The Commonwealth has made these accusations, and the law says: 'You made this accusation. The burden of proof is on you.' So the Commonwealth has the obligation to produce evidence in this case, in this room, in the course of this trial. It is the Commonwealth's obligation to produce evidence to persuade, to satisfy the burden of proof.

"Now, the obligation to persuade whom? The obligation to persuade you jurors from the evidence that what the Commonwealth claims is so. Now, what is the extent of the burden of proof? How persuaded must you be from

able phrase adequately dispel any unintended implication that the defendant must bear the burden of proof. It is unlikely that this one unfortunate phrase, prefaced by statements adequately delineating the unequivocal nature of the burden of proof standard that the Commonwealth is required to bear, prejudiced the jury. There was no error in the judge's instructions in this regard.

The defendant's next contention regarding the judge's instructions derives from a purported variance between one of the indictments and the judge's charge. The indictment charged that the defendant had committed armed assault in a dwelling "with intent to commit a felony, to wit: robbery." In his instructions on the specific intent needed to accompany the armed assault offense, the judge told the jury that the felony intended

---

the Commonwealth's evidence before the Commonwealth may be said to have proved its case and before you can find the Commonwealth has proved its case?

"The burden of proof on the Commonwealth is the burden of proof beyond a reasonable doubt, that is to say, from the evidence or that part or parts, from that portion or portions of it, which you as reasonable jurors earnestly seeking the truth, from that part of the evidence, from those things that you find trustworthy and credible, that the Commonwealth has so satisfied you that you have within you a firm and a settled conviction, a firm and a settled belief that this man is guilty, such a firm and a settled belief that you may be said to have moral certitude.

"If the Commonwealth on the evidence it's produced here has so satisfied you and you have within you a firm and settled conviction, a firm and settled belief to a moral certitude — to a moral certitude — that this defendant is guilty, then, Mr. Foreman and ladies and gentlemen, the Commonwealth has satisfied its burden of proof and is entitled to your verdict.

"And the law is also that when all is said and done, if there remains in the mind of the juror a reasonable doubt, then the law says this defendant is entitled to the benefit of that doubt, and your verdict shall be not guilty.

"Proof beyond a reasonable doubt is not proof, now, to a mathematical absolute. Proof beyond a reasonable doubt is not proof to a philosophical certitude, and proof beyond a reasonable doubt is not proof beyond all possibility of innocence. But proof beyond reasonable doubt is that measure of proof which satisfies you as a reasonable juror that this defendant be guilty. If you are satisfied to a moral certitude, the Commonwealth, as I say, has satisfied its burden of proof.

"A reasonable doubt — it is sometimes said that a reasonable doubt is a doubt for which one could give a reason."

could be robbery or murder.[6] Although the defendant made no objection to this difference at trial, he now urges that this "variance" between the indictment and the charge was so prejudicial as to require reversal.

We disagree. Our recent holding in *Commonwealth* v. *Hobbs,* 385 Mass. 863 (1982), a case raising almost identical issues, effectively disposes of the defendant's argument. In *Hobbs,* the indictment charged that the defendant had broken and entered with intent " 'to commit a felony, to wit: larceny.' " *Id.* at 869. However, the judge's instructions stated that the intended felony underlying the breaking and entering could be rape, robbery, or homicide, as well as larceny.

It is without doubt the general rule that "a crime must be proved as charged and must be charged as proved." *Commonwealth* v. *Grasso,* 375 Mass. 138, 139 (1978). "Th[is] rule does not, however, apply to technical defects that do not affect substantial rights." *Hobbs, supra* at 869. We held in *Hobbs* (and had held previously) that "when the particular terms of the indictment from which the evidence or instructions depart [are] merely 'surplusage' — unnecessary to describe the crime — and [do] not mislead the defendant, confuse the jury, or raise the danger of retrial after acquittal," such a departure is harmless. *Id.* at 870. See, e.g., *Commonwealth* v. *Whitehead,* 379 Mass. 640, 646-650 (1980); *Commonwealth* v. *Grasso, supra* at 139-140; *Commonwealth* v. *A Juvenile,* 365 Mass. 421, 439-440 (1974). This situation must be contrasted with the case where the judge's instructions, rather than merely fleshing out the essential elements of an indictment, effectively

---

[6] "Armed assault in a dwelling is the other thing that the Commonwealth alleges as criminal behavior in which Costello engaged. The statute says: 'Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to rob or murder, shall be punished.'

". . . .

"Again the Commonwealth has the burden of proving beyond a reasonable doubt that either as a principal actor or as a participant in a joint venture this defendant did enter while being armed or participated in a joint venture in which that was done, having the specific intention to rob or murder, assault a person in a dwelling."

permit the jury to convict on an additional offense. This occurred in *Tarpley* v. *Estelle,* 703 F.2d 157 (5th Cir.), cert. denied sub nom. *McKaskle* v. *Tarpley,* 464 U.S. 1002 (1983), a case relied upon heavily by the defendant. However, in both *Hobbs* and the instant case, the specification in the indictment of the particular "intended" felony was surplusage, and the additional felonies mentioned in each judge's instructions did not prejudice the defendant.

General Laws c. 277, § 35, which describes the effect of a true "variance," is also of importance.[7] The statute stipulates that a divergence between an indictment and the Commonwealth's proof will not be a basis for acquittal where the indictment does correctly specify the essential elements of the crime, and the alleged variance does not prejudice the defendant in his defense. G. L. c. 277, § 35. Thus, "[t]he same principle applies on review of a conviction, when the defendant claims that the judge's instructions created a variance between the indictment and the proof to be considered." *Hobbs, supra* at 870. The divergence between the indictment and the judge's instructions in the instant case was therefore of no consequence, and the defendant's argument for reversal on this ground must be rejected.

The defendant also bases his claim of error on the judge's instructions relating to the burden of proof on voluntary intoxication and its role in the jury's assessment of the existence of deliberate premeditation and extreme atrocity or cruelty. In effect, the defendant argues that the judge erred in not instructing the jury that the Commonwealth had the burden of proving that the defendant was not intoxicated. It is true that evidence of voluntary intoxication, while not a complete defense, can reduce to second degree the charge of first degree murder. See,

---

[7] General Laws c. 277, § 35, provides as follows: "A defendant shall not be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defence. He shall not be acquitted by reason of an immaterial misnomer of a third party, an immaterial mistake in the description of property or the ownership thereof, failure to prove unnecessary allegations in the description of the crime or any other immaterial mistake in the indictment."

e.g., *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617 (1949). However, "[i]mpairment of a defendant's ability to make a decision in a normal manner," through intoxication or otherwise, is *only* an "additional factor to be weighed" in the first degree murder determination. *Commonwealth* v. *Gould,* 380 Mass. 672, 685-686 (1980). *Commonwealth* v. *Perry,* 385 Mass. 639, 648-649 (1982). Contrary to the defendant's assertion, intoxication is not a defense to murder in the first degree that the Commonwealth must disprove. In this respect, it is quite unlike that narrow category of defenses (such as self-defense) that by their very nature negate essential elements of a crime and for this reason their nonexistence must be proved by the Commonwealth beyond a reasonable doubt. See, e.g., *Patterson* v. *New York,* 432 U.S. 197 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). Voluntary intoxication, like any other factor bearing upon a defendant's mental state, is important to the jury's determination whether deliberate premeditation or extreme atrocity or cruelty can be found. However, its importance relative to other factors is part of the subtle weighing process performed by the jury alone. There was no error in the judge's refusal to charge the Commonwealth with the burden of proof on the subject of voluntary intoxication.

We similarly find no precedent to support the defendant's contention that the judge was required to direct the jury explicitly that age was to be considered as a mitigating factor in their deliberations. It is a new notion that age in and of itself provides an excuse from criminal responsibility. The defendant's reliance on *Commonwealth* v. *A Juvenile,* 389 Mass. 128 (1983), as supporting this principle is mistaken; that case simply dealt with the standards to be applied in evaluating a waiver of Miranda rights by a juvenile. The opinion neither raised nor answered the question of the effect of age on one's mental capacity to commit a crime, and we decline to reach that question here. The defendant was not of such an age in this case that the issue of a special instruction need be addressed. In this respect, as in the others previously discussed, we can find no error in the judge's instructions to the jury.

Finally, the defendant objects to the "from and after" sentencing structure imposed by the judge, and asks us to use our powers under G. L. c. 278, § 33E, to modify his sentences or to direct the entry of a verdict of a lesser degree of guilt. We discussed the issues surrounding this sentencing approach in connection with our decision in *Commonwealth* v. *Pennellatore, supra.* We uphold the sentences imposed in the instant case for the reasons expressed in *Pennellatore,* also decided today. As in *Pennellatore,* we also decline to exercise our powers under G. L. c. 278, § 33E.

*Judgments affirmed.*