## COMMONWEALTH vs. MICHAEL J. SHEA.

Norfolk. November 5, 1987. — March 1, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Grand jury proceeding, Argument by prosecutor, Conduct of prosecutor, Instructions to jury, Presumptions and burden of proof, Capital case, Assistance of counsel. *Grand Jury. Evidence,* Grand jury proceeding, Relevancy and materiality, Consciousness of guilt, Prior conviction. *Intoxication. Homicide.*

The integrity of a grand jury proceeding, in which indictments for murder and armed burglary were returned, was not impaired by the prosecutor's introduction of certain evidence alleged to have been unfairly prejudicial, where there was no indication that the evidence introduced was false or deceptive, and where the balance of the evidence presented to the grand jury was sufficient to justify the indictments against the defendant. [734-735]

Reversal of a defendant's convictions of murder and armed burglary was not required by the fact that, in her closing argument, the prosecutor suggested that the defendant's pawning of a woman's gold bracelet could be explained by his commission of another crime, where the improper suggestion was vague and the evidence of the defendant's guilt was strong. [735-736]

At the trial of indictments for murder and armed burglary, the prosecutor's representation of current case law governing benzidine testing and her demonstration of the sound heard by a witness, on the night of the crimes, by tapping the defendant's shoes against a rail in the courtroom during her closing argument, contentions alleged by the defendant to depend on facts not in evidence, did not create a substantial risk of a miscarriage of justice, where it was clear that the prosecutor was restating testimony regarding benzidine testing rather than personally commenting on the prevailing law, and where the prosecutor's demonstration was appropriately part of her closing argument because it was fairly based on reasonable inferences from the evidence. [736-737]

In the circumstances, a criminal defendant's testimony at a pretrial motion hearing as to when he was informed of his Miranda rights was properly before the jury at his trial and, consequently, the prosecutor's unobjected-to comments on inconsistencies between the defendant's pretrial testimony and his testimony at trial, in order to cast doubt on the defendant's credibility, were appropriate. [737-738]

At a criminal trial, there was no impropriety in a prosecutor's unobjected-to comments regarding the credibility of the evidence, where her comments amounted to an appraisal of the evidence and the strength of the Commonwealth's case. [738-739]

There was no merit to a criminal defendant's arguments that certain unobjected-to comments by the prosecutor in her closing argument improperly focused the jury's attention on his motive in choosing the defense of police contrivance, and that the prosecutor unfairly indicated that the choice of that defense demonstrated guilt. [739]

At a criminal trial, the judge acted within his discretion in admitting in evidence the defendant's refusal to submit to a court-ordered blood extraction as well as certain statements made by him at that time. [740]

At the trial of indictments for murder and armed burglary, the prosecutor's use of evidence of the defendant's prior convictions during cross-examination did not create a substantial risk of a miscarriage of justice, where the judge excluded certain convictions of crimes similar to the charges for which the defendant was on trial, and gave appropriate limiting instructions to the jury concerning other convictions that were admitted in evidence. [740-741]

At a criminal trial, the judge correctly determined that an employment application completed by the defendant was not a signed "statement" within the scope of the parties' pretrial discovery agreement and that testimony as to its contents was admissible for purposes of impeachment. [741]

No substantial risk of a miscarriage of justice was created at a criminal trial by the judge's instruction to the jury to disregard defense counsel's statement to the jury that they should consider what the grand jury had thought about certain testimony. [741-742]

At the trial of indictments for murder and armed burglary, no substantial risk of a miscarriage of justice was created by the judge's employment of certain so-called "finding language" during his instructions to the jury on the issue of intoxication, which allegedly shifted the burden of proof to the defendant on that issue, where he twice instructed the jury on the intoxication issue without the use of any "finding language," where his use of that language did not rise to the level previously disapproved by this court, and where he emphasized that the Commonwealth has the burden of proving all the elements of the crimes charged. [742-743]

At a murder trial the judge correctly instructed the jury on the issue of the defendant's voluntary intoxication, as related to their determination whether the crime was committed with extreme atrocity or cruelty. [743-744]

On appeal from a conviction of murder in the first degree, this court declined to grant relief under G. L. c. 278, § 33E, either on the ground of prosecutorial misconduct or on the ground of ineffective assistance of counsel. [744]

INDICTMENTS found and returned in the Superior Court Department on October 11, 1983.

Motions to dismiss and to suppress evidence were heard by *John D. Sheehan,* J.; additional motions to suppress evidence were heard by *Robert A. Mulligan,* J., and *John J. Irwin, Jr.,* J., and the cases were tried before *James P. Lynch, Jr.,* J.

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Judith A. Cowin,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. In August, 1984, the defendant was convicted of murder in the first degree and armed burglary. In this appeal, the defendant alleges that (1) the indictments must be dismissed because the integrity of the grand jury was impaired by the poor quality of the evidence presented for its consideration; (2) numerous improper comments made by the prosecutor in closing argument mandate reversal of the judgments; (3) the prosecutor was erroneously allowed to introduce evidence demonstrating the defendant's consciousness of guilt; (4) the use of the defendant's prior convictions at trial was error; (5) the prosecutor's use of the defendant's application for employment was error, and (6) portions of the jury instructions were erroneous. Finally, the defendant argues that a new trial should be granted or the verdict of murder in the first degree be reduced to murder in the second degree under G. L. c. 278, § 33E (1986 ed.), because the judge's use of "finding language" on the issue of intoxication improperly shifted the burden of proof to the defendant. We affirm.

On June 27, 1983, the body of the victim, Sheryl L. McDonald, was discovered in her Weymouth apartment lying across the middle of her bed parallel to the headboard. Her nightgown was heavily stained with blood, as were the pillows and the sheets on the bed. She suffered a number of wounds made by a sharp instrument, including two stab wounds in the chest, two slash wounds in the neck, and a fourteen-inch wound up the middle of her body. Several areas on the pillows and sheets bore marks which appeared to have been made by bloody hands. Upon closer inspection, these marks revealed discernible

fingerprints. After experts matched ten points of identification, a left thumb print was identified as that of the defendant, a man whom the victim had dated. On the kitchen table was a purse tilted on its side. The purse was empty.

Witnesses who were with the defendant earlier on the night of the murder testified that he was wearing white trousers. The defendant, however, claimed that he was wearing jeans. A search of the defendant's apartment pursuant to a warrant yielded white trousers stained with blood. The blood was examined by the chemist and it matched the blood type of the victim.

1. *The integrity of the grand jury proceedings.* The defendant filed a motion to dismiss the indictments on the ground that the prosecutor introduced unfairly prejudicial evidence which impaired the integrity of the grand jury. The defendant argued that the grand jury was misled by the introduction of the following evidence: (1) the defendant's possession of a woman's bracelet; (2) the presence of blood in his car; (3) his alleged involvement with drugs; (4) his poor work performance; (5) his possession of other jewelry, as well as credit cards in names other than his own; and (6) his request for counsel. An evidentiary hearing was held on the defendant's motion. After examining the grand jury minutes, the motion judge was unconvinced that false or misleading evidence had been introduced and he denied the defendant's motion.

We conclude that there was no error in the judge's determination. The judge was justified in ruling that the evidence was neither materially misleading nor unfairly prejudicial to the defendant. In order to sustain his claim of impairment of the integrity of the grand jury proceedings, the defendant bears a heavy burden. Under *Commonwealth* v. *Mayfield,* 398 Mass. 615, 621 (1986), the defendant must show that the prosecutor knowingly introduced false or deceptive evidence. In addition, the defendant must demonstrate that the evidence probably influenced the grand jury to return an indictment. *Id.* Here, the defendant is unable to satisfy even the first element. There is no indication that the testimony was false or deceptive. Moreover, after reviewing the record, we are convinced that the

balance of the evidence presented to the grand jury was suffi-
cient to justify the indictments against the defendant. We con-
clude that the integrity of the grand jury was not impaired.

2. *The prosecutor's closing argument.* The defendant argues
for the first time on appeal that the prosecutor made improper
comments during her closing argument. Accordingly, we limit
our review to a determination whether the comments, if improp-
er, posed a substantial likelihood of a miscarriage of justice
under G. L. c. 278, § 33E. *Commonwealth* v. *Haas,* 398 Mass.
806, 812 (1986). Our examination of the remarks leads us to
conclude that they did not create such a likelihood of injustice.

a. *The bracelet.* The defendant objects to the prosecutor's
suggestion during closing argument that the defendant's pawn-
ing of a woman's gold bracelet in California could be explained
by his criminal propensity.[1] He asserts that the prosecutor's
remarks implied that the defendant had stolen the bracelet.[2]
The defendant insists that this was pure speculation without
any basis in fact and, as such, the comments were unfair and
constituted reversible error. Without approving of the prosecu-
tor's closing argument, we conclude that it was not reversible
error.

In his reply brief, the defendant directs our attention to this
court's recent decision in *Commonwealth* v. *Shipps,* 399 Mass.
820 (1987). He maintains that it is supportive of his claim that
the comments were improper. In *Commonwealth* v. *Shipps,
supra* at 838, evidence that the police found a bag containing

---

[1] The relevant portions of the prosecutor's closing are as follows: "Then
this bracelet. It is another attempt to just cloud the issue. The fact that a
woman's gold bracelet was found at the pawn shop where it had been
pawned by this defendant in California. *This defendant, by his own tes-
timony, is a known criminal, has been arrested several times. He told you
that from the witness stand.* The fact that a woman's bracelet was found
in his possession in California three months after the crime, that has no
relation to *this* crime." (Emphasis added.)

[2] It should be noted that, at the grand jury level, it was suspected that
the bracelet belonged to the victim. Evidence regarding the bracelet's re-
trieval from the pawn shop and the fact that an empty purse was located
in the victim's apartment was introduced to the grand jury. However, this
theory was abandoned when no one was able to identify the bracelet as
belonging to the victim.

jewelry in the defendant's bedroom was introduced at his trial on two indictments charging murder in the first degree. While the judge reprimanded the prosecutor for introducing evidence suggestive of other crimes, he denied the defendant's motion for mistrial. On appeal, we agreed that the reference to unrelated crimes was improper but upheld the judge's denial of the motion because we found "[t]he suggestion of other crimes was so vague and the evidence inculpating the defendant so strong . . . that this did not taint the defendant's trial." *Id.* We find our language and reasoning in *Commonwealth* v. *Shipps, supra,* to be particularly appropriate and dispositive of the issue in the instant case. The indefinite suggestion that the bracelet could be explained by the defendant's commission of another crime did not constitute reversible error, particularly when viewed in conjunction with the overwhelming evidence of the defendant's guilt.

b. *Arguments depending on facts not in evidence.* The defendant contends that the prosecutor exceeded the proper scope of closing argument. The defendant insists that on two occasions, one involving representations of current law and the other dealing with a courtroom demonstration, the prosecutor improperly relied on facts not in evidence. The defendant's contentions are without merit.

The first incident involved the prosecutor's summary of a witness's testimony. The prosecutor argued as follows: "Then the question of the benzidine test on the defendant's hand[s]. . . . You also heard Trooper Murphy testify that *the cases have forbidden* the police to perform benzidine test[s] on the hands of defendants who are arrested. *The police hands are tied. They can't do something like that,* according to his knowledge of the law." (Emphasis added.) Following the judge's charge, the defendant objected to these and other remarks by the prosecutor and moved for a mistrial. The judge denied the motion after indicating his belief that the prosecutor was restating the witness's testimony rather than personally commenting upon the case law governing benzidine testing.

The defendant should have objected at the close of the prosecutor's argument. *Commonwealth* v. *Johnson,* 374 Mass. 453,

457-458 (1978), and cases cited. Since the defendant's objection was not timely, he is not entitled to review as of right. However, we will review the defendant's contentions pursuant to our responsibilities under G. L. c. 278, § 33E.

We note that it was defense counsel who originally elicited the commentary regarding benzidine testing from Trooper Murphy during cross-examination. Curiously, defense counsel did not move to strike Murphy's testimony at that time. It is clear that the prosecutor was recounting portions of the witness's testimony and not independently expounding on the prevailing law during her closing argument. Though we do not approve of the accuracy of the witness's opinions of the law, there was no reversible error.

The defendant also argues that the prosecutor improperly demonstrated the sound that the defendant's shoes made by tapping them against a rail in the courtroom during final argument. The defendant once again failed to object during the closing. Accordingly, we will review only to determine whether the demonstration, if error, created a substantial likelihood of injustice. G. L. c. 278, § 33E. A witness had previously testified that, on the night in question, she saw a person get into an automobile outside the victim's residence and heard a "clicking sound" as the person walked, as though there were "taps on [the] heels" of the person's shoes. Furthermore, the defendant's shoes had been admitted in evidence. We have allowed courtroom demonstrations by prosecutors when they are reasonably grounded in the evidence. *Commonwealth* v. *Johnson, supra* at 458-459. Here, we conclude that the comments and the illustrative tapping of the shoes were appropriately part of the closing argument because they were fairly based on reasonable inferences from the evidence. *Commonwealth* v. *Kozec,* 399 Mass. 514, 516 (1987).

c. *The prosecutor's use of the defendant's pretrial hearing testimony.* The defendant alleges that the prosecutor improperly commented during final argument on certain testimony presented by the defendant at pretrial motion hearings. In an attempt to cast doubt on the defendant's credibility, the prosecutor highlighted inconsistencies between the defendant's

statements during a pretrial motion hearing and his testimony during trial regarding when he was informed of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966). The defendant claims that the trial judge excluded his pretrial motion testimony during trial, and therefore, it was not a proper subject for closing comments by the prosecutor. We disagree.

The trial transcript reveals that, during cross-examination, defense counsel failed to object to the prosecutor's questions concerning the defendant's prior pretrial motion testimony. In fact, defense counsel participated in presenting the defendant's prior testimony to the jury by positing questions to the defendant during redirect examination. It was not until recross-examination that defense counsel first objected to the prosecutor's questions on this issue. At that time, the judge ruled on the objections and excluded further discussion of the defendant's prior testimony. The judge's ruling did not retroactively exclude testimony already in evidence. Therefore, the evidence was properly before the jury and the prosecutor was entitled to comment upon it in her closing. *Commonwealth* v. *Lamrini,* 392 Mass. 427, 431 (1984).

d. *The prosecutor's comments regarding the credibility of evidence.* The defendant objects to three other prosecutorial remarks concerning the weight of the evidence. Specifically, the defendant objects to: the prosecutor's comments that the evidence against the defendant was "overwhelming"; her comments that the fingerprint evidence was "undisputed"; and her additional comments to the effect that only the defendant possessed a motive to lie.[3] These remarks, the defendant argues, improperly interjected the prosecutor's opinion of the credibility of the Commonwealth's witnesses while undermining the defendant's case. The defendant also contends that the statements tended to shift the burden of proof. We are not persuaded by the defendant's analysis of these comments.

---

[3] The defendant also objects for the first time on appeal to the prosecutor's comment in closing argument that the "police are not on trial here." While comments by prosecutors and judges to the effect that the police are not being tried are "unnecessary," they do not create a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Boyer,* 400 Mass. 52, 59 (1987).

As we noted in *Commonwealth* v. *Johnson, supra* at 459: "Counsel for each party is permitted and expected to marshal the evidence and to argue for a decision of the controversy in favor of his client. This process often involves pointing out . . . the strength of his client's case . . . . This applies as much to a criminal case as it does to a civil case." The comments by the prosecutor amounted to an appraisal of the evidence and the strength of the Commonwealth's case. As such, there was no error.

e. *The prosecutor's comments concerning the defendant's trial strategy.* The defendant argues that the prosecutor improperly focused the jury's attention on his motive in choosing the defense of police contrivance. He further alleges that the prosecutor unfairly indicated that the use of the defense itself demonstrated guilt. The defendant's argument is without merit.

We have read the prosecutor's closing argument as a whole and do not agree that the prosecutor implied that the defendant's choice of defense evidenced guilt.[4] The prosecutor did refer briefly to the defense theory of police contrivance during closing argument. We conclude, however, that the essence of the prosecutor's closing remarks was that the defendant was trying to confuse and distract the jury by diverting their attention away from the strong evidence of his guilt. It is not improper for the prosecutor to indicate that the defendant attempted to "fool" the jury. *Commonwealth* v. *Cameron,* 385 Mass. 660, 669-670 (1982). As we have noted, "defense trial tactics are not immune from comment." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 272 (1982).

---

[4] Relevant portions of the prosecutor's closing argument are as follows: "First of all, the defendant has suggested right along that the police contrived the case against Michael Shea. . . . Michael Shea doesn't want you to concentrate on him or on the evidence against him. He wants you to concentrate on the police."

"Faced with this overwhelming evidence against him, what can the defendant do? He doesn't want you to look at the real evidence. . . . He tries to get you to think about anything other than the evidence. He tries to get you to think about anything except him. He tries to focus your attention away from him and away from the evidence to distract you from all the facts that prove his guilt."

3. *Evidence of consciousness of guilt.* The defendant's refusal to submit to a court-ordered blood extraction, and the statements made by him at that time, were the subject of several motions before and during trial. The pretrial motions to suppress were denied and the trial judge ultimately ruled that the prosecutor could introduce the evidence.[5] When this evidence was offered, however, the defendant failed to renew his objections. As we noted in *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 7 (1986), the filing of a motion in limine to prevent the introduction of evidence does not, by itself, preserve appellate rights.

On appeal, the defendant argues that the introduction of the evidence constituted reversible error. In the absence of appropriate objections at trial, we limit our review of this issue to determine, if error, whether there was a substantial likelihood of a miscarriage of justice. We conclude that the judge acted within his discretion in admitting the defendant's refusal to submit to the blood extraction and the statements made by the defendant at that time. Accordingly, there was no error.

4. *The prosecutor's use of the defendant's prior convictions.* The defendant alleges that the prosecutor used evidence of the defendant's prior convictions substantively during cross-examination of the defendant, and that the verdicts must therefore be reversed. The defendant insists that the prosecutor used the evidence to establish the defendant's criminal propensity, not to impeach his credibility. The defendant also urges that the order in which the prosecutor used the prior convictions is evidence of prosecutorial overreaching, i.e., that the prosecutor improperly emphasized the defendant's convictions of violent crimes against women. We find no error.

Pursuant to his ruling on a motion in limine, the judge excluded certain convictions of crimes similar to the present

---

[5] During the trial, the defendant also testified regarding his refusal to submit to the blood extraction: "I informed the police officers and the doctor . . . [t]hat I was told by my attorney not to consent to give blood. And I informed them that I wouldn't voluntarily do it because I didn't feel that my legal appellate issues were exhausted and I told them I wouldn't voluntarily do it, but I'm not going to throw any fists at any body."

charges and determined that other convictions would be admissible. The judge also instructed the jury on the limited use of the evidence for impeachment purposes. Thus, the overly prejudicial prior convictions were excluded and the jury were given appropriate limiting instructions concerning convictions that were admitted in evidence.

At trial, the defendant failed to object to the prosecutor's alleged substantive use of the prior convictions. Accordingly, we review only to determine whether the prosecutor's use, if error, created a substantial likelihood of miscarriage of justice. After examining the relevant portions of the record, we conclude that there is no evidence of intentional overreaching by the prosecutor and, therefore, no risk of injustice.

5. *The prosecutor's use of the defendant's application for employment.* A few days after the murder, the defendant left Massachusetts. Shortly thereafter, Massachusetts enforcement officials traced the defendant to California. The defendant's next claim of error involves the prosecutor's use of an employment application that the defendant completed while he was in California. For purposes of impeachment and as evidence of the defendant's consciousness of guilt, the prosecutor pointed out that the defendant gave a false date of birth and failed to list several former employers on the application. The application was never entered as an exhibit but was marked for identification purposes only. The defendant alleges that the prosecutor committed misconduct in failing to disclose the application during discovery and that the judge erred in allowing the introduction of its contents.

We conclude that the judge was correct in determining that the application was not a signed "statement" within the scope of the pretrial discovery agreement. Accordingly, testimony concerning the information contained in the application could properly be admitted for purposes of impeachment. See Mass. R. Crim. P. 14 (d), 378 Mass. 874 (1979). There was no error.

6. *Jury instructions.* During closing argument, defense counsel requested that the jury consider what the grand jury thought about testimony concerning the defendant's possession

of a woman's bracelet.[6] The defendant objects to the judge's instruction that directed the jury to disregard the defense counsel's request. The defendant argues that this instruction required the jury to disregard his principal theory of defense, i.e., that the case against him was contrived. The defendant insists that the presentation to the grand jury of the evidence regarding the bracelet was an example of this contrivance.

Since the defendant failed to object, we must determine whether, if erroneous, that portion of the jury charge created a substantial likelihood of a miscarriage of justice. We conclude that it did not. We do not agree that this instruction precluded the jury from considering the defense theory of contrivance. Rather, we view the instruction as an appropriate admonition that it was improper for the jurors to consider whether the quality of the evidence presented to the grand jury was sufficient to warrant the indictments. The quality of that evidence had already been challenged and was the subject of a motion hearing. It is not the role of trial jurors to assess the sufficiency of the evidence presented to the grand jury. Therefore, the judge acted properly in charging the jurors to disregard the defendant's request.

The defendant alleges for the first time on appeal that the judge employed "finding language" during his instructions on the issue of intoxication which impermissibly shifted the burden of proof to the defendant on that issue.[7] We review the jury

[6] The appropriateness of the presentation of this evidence to the grand jury had already been the subject of a motion to dismiss. As noted, *infra,* the judge found that the integrity of the grand jury was not impaired by its introduction.

[7] A portion of the judge's charge illustrating the so-called "finding language" is reproduced: "There has been some evidence in this case concerning intoxication, drug use. What is the law with respect to such use when it comes to the matter of first degree, second degree murder? I don't know what you will *find* on the evidence. If you reach this branch in this case, that is *if you found* there was murder and that it was the defendant who was the murderer, of course, you never reach any of this *if you find* that he was not the murderer; but *if you find* that he was beyond a reasonable doubt, then we must instruct you as to what is your duty and your responsibility in connection with intoxication or drug use as mitigating factors." (Emphasis added.)

charge to determine whether it was so erroneous that it created a substantial likelihood of a miscarriage of justice. Our review leads us to conclude that there was no reversible error.

In his reply brief, the defendant cites *Commonwealth* v. *Costello,* 392 Mass. 393 (1984), and argues that the decision is inconsistent with other law and should be reconsidered by this court. Specifically, the defendant objects to our pronouncement in that case that: "intoxication is not a defense to murder in the first degree that the Commonwealth must disprove," *id.* at 405, and that intoxication "is quite unlike that narrow category of defenses . . . that by their very nature negate essential elements of a crime." *Id.* The defendant argues that, because intoxication may negate premeditation, it must be disproved by the Commonwealth. Accordingly, the defendant asserts that the finding language had the effect of improperly shifting the burden of proof from the Commonwealth to the defendant.

Even if we assume, without deciding, that, because intoxication tends to negate premeditation and therefore negates an element of the crime so that the Commonwealth has the burden of disproving it, we conclude that the finding language in this case is not offensive. Cf. *Commonwealth* v. *Tevenal, ante* 225 (1987). Twice the judge instructed the jury on the intoxication issue without the use of any finding language. Moreover, the judge's use of that language here did not rise to the level previously disapproved by this court. Finally, the judge clearly emphasized that the Commonwealth has the burden of proving all the elements of the crimes charged.

The defendant next claims that the judge overstated the burden of establishing intoxication by stressing the uniqueness of allowing the defense of intoxication to mitigate crime. The judge stated that: "The voluntary use of liquor or drugs doesn't excuse or justify the murder, but it does require the lessening of the offense from first degree to second degree. In that one special situation." This was a correct pronouncement of the law. "While voluntary intoxication cannot be used to excuse criminal conduct," the jury may consider it when deciding whether the defendant murdered with extreme atrocity or cruel-

ty. *Commonwealth* v. *Sylvester,* 400 Mass. 334, 336 (1987). There was no error.

7. *Exercise of this court's power under G. L. c. 278, § 33E.* Finally, the defendant urges us to exercise our broad power under G. L. c. 278, § 33E, to grant the defendant a new trial or reduce the verdict to murder in the second degree. He cites prosecutorial misconduct and ineffective assistance of trial counsel as compelling reasons for the exercise of this extraordinary power. We have reviewed the entire record pursuant to our responsibilities under § 33E. We decline to use our power to order a new trial or to reduce the verdict in this case.

Contrary to the defendant's assertions, we fail to recognize a pattern of intentional misconduct and overreaching by the prosecutor. Nor are we convinced that trial counsel's failure to preserve errors constituted ineffective assistance of counsel in violation of the defendant's constitutional rights. In order to assert successfully a claim of ineffective assistance of counsel " [t]he defendant must prove both that (1) counsel's performance was deficient and (2) counsel's performance prejudiced the defense . . . such that, but for the errors of counsel, it is reasonably probable that" the result would have been different. *Commonwealth* v. *Florentino,* 396 Mass. 689, 690 (1986). The behavior of defense counsel in this case did not fall measurably below that of an ordinary, fallible attorney so as to deprive the defendant of an otherwise available defense. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). Accordingly, the defendant is not entitled to a reversal or reduction of the verdict of murder in the first degree.

*Judgments affirmed.*