## Commonwealth *vs.* Gerald Sullivan, Jr.

Middlesex. November 9, 2001. - January 30, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Cowin, JJ.

*Witness,* Immunity. *Practice, Criminal,* Immunity from prosecution, Argument by prosecutor, Cross-examination by prosecutor, Comment by prosecutor, New trial, Capital case.

At a criminal trial, comments by the prosecutor in opening statement and closing argument, alleged to have improperly portrayed the role of the Supreme Judicial Court in granting immunity to a prosecution witness and to have vouched for that immunized witness's credibility, were not improper. [726-728]

At a criminal trial, the defendant's right to confrontation and cross-examination of an immunized witness with regard to the subject of the immunity agreement were not violated where, even if the judge's limitation on cross-examination could be construed as overly broad, the defense was allowed to elicit sufficient information about the background of the immunity agreement in an effort to demonstrate the witness's bias, and where defense counsel could have called the witness's attorney as a witness to inquire into the attorney's conversations with the prosecution regarding immunity without violating the witness's attorney-client privilege. [728-731]

At a criminal trial, information introduced by a single question of the prosecutor concerning the prior trial of a codefendant was not improper, where an objection to that question was sustained, and the judge properly instructed the jury. [731-733]

The judge in a criminal case acted within his discretion in denying the defendant an evidentiary hearing on his motion for a new trial to determine whether the Commonwealth had an understanding with an immunized witness that the witness would cooperate in return for immunity, where the judge properly determined that the defendant failed to raise a substantial issue. [733-734]

Indictments found and returned in the Superior Court Department on June 23, 1994.

The cases were tried before *Paul A. Chernoff,* J., and a motion for a new trial, filed on November 19, 1997, was heard by him.

*Myles D. Jacobson* for the defendant.

*David W. Cunis,* Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant was convicted by a jury of murder in the first degree based on a theory of extreme atrocity or cruelty. He was also convicted of larceny from the person, a lesser offense of the charge of armed robbery for which he had been indicted. Represented by new counsel, the defendant filed a motion for a new trial, which the trial judge denied. We have consolidated the defendant's appeals from his convictions and from the denial of his motion for a new trial. The defendant claims that (1) the prosecutor improperly portrayed the role of the Supreme Judicial Court in granting immunity to a witness and vouched for that immunized witness's credibility; (2) the defendant's right to confrontation and cross-examination were violated by the judge's limitation on cross-examination regarding conversations between the immunized witness and his attorney; (3) information was improperly admitted concerning the trial of a codefendant; and (4) on his motion for a new trial, the judge erred by denying him an evidentiary hearing to determine whether the Commonwealth had an understanding with the immunized witness that the witness would cooperate in return for immunity.[1] The defendant also requests that we exercise our extraordinary power under G. L. c. 278, § 33E, to order a new trial. We affirm the convictions and the order denying the motion for a new trial and decline to exercise our power under G. L. c. 278, § 33E.

*Facts.* The jury were warranted in finding the following facts. The Commonwealth's primary witness at trial was Christopher Rogovich, who had been granted immunity by a single justice of this court. See G. L. c. 233, § 20D. Rogovich testified as follows. On April 27, 1994, Rogovich spent the afternoon at a park playing basketball and drinking beer with several friends including the defendant, Jeffrey Hardy, Richard Allison, and Thomas Moran (victim). The defendant and Hardy left the park at one point and returned with what appeared to be "PCP," or "angel dust." Several of the group smoked some of the drug. The effects of the drug were rather weak and as a result, the

_____

[1]In his motion for a new trial, the defendant raised five issues. Of these, he pursues on appeal only two: prosecutorial vouching for the immunized witness and the failure to grant an evidentiary hearing regarding any agreement between the Commonwealth and the immunized witness. We deem the remainder of the arguments in his motion for a new trial as waived.

victim stated that the drug was fake. The victim teased the defendant and Hardy in front of the others and said they had "got beat," and were "idiots" and "chumps." The victim continued to make similar comments throughout the day, apparently upsetting the defendant and Hardy. While the group was at a friend's house later that evening, the defendant and Hardy left for approximately twenty minutes; when they returned, Hardy showed Rogovich a gun tucked in his pants.

The group later went to a bar, and after approximately one hour, Hardy told Rogovich that he wanted to leave the bar, but without the victim. Hardy, Rogovich, Allison, and the defendant left, but the victim caught up with them before they reached Hardy's car. All five men got into the car and Hardy dropped off Rogovich and the victim a short distance from a Dunkin' Donuts shop. Hardy whispered to Rogovich to try to lose the victim, and then to meet him and the others at the Dunkin' Donuts. The whole group, however, including the victim, eventually returned to Hardy's car. Hardy repeatedly asked the victim if he was going home, causing the victim to ask Hardy if he was trying to get rid of him. Hardy drove to the victim's girl friend's house. The victim got out of the car and yelled, "[Hardy], you're nothing but a fuckin' punk. You're a punk." The victim also called the others "punks" and "fake gangsters." Hardy yelled back to the victim, "[Y]ou want to come? Get in the fucking car." The victim got back into the car.

After driving for a while, Hardy parked the car. Hardy, Allison, and the defendant walked to a grassy area, where they talked for approximately five minutes. When they returned, Hardy announced that they were going to meet a drug dealer. Hardy drove to a nearby park, where everyone got out of the car and walked to a baseball field. Hardy then stated that the dealers were coming from a certain direction and told each person where to stand. When Rogovich turned around, the defendant was holding a gun to the victim's head. Rogovich heard several clicks from the gun and then saw Hardy take the gun from the defendant. As Rogovich's back was turned, he heard a gunshot and when he turned back around he saw the victim cover his mouth and heard him say, "Hardy, you shot me in the mouth." Hardy responded, "Now you shut your

fuckin' mouth.'' When Rogovich turned around again, the victim was on the ground and Hardy, Allison, and the defendant were repeatedly stabbing him. The defendant said, "Get his wallet. Get his money.'' Rogovich had returned to Hardy's car when he heard another gunshot. Shortly thereafter, the defendant arrived at the car with a bloody knife. Rogovich and the defendant got into the car and drove off. Rogovich did not know how Hardy and Allison left the park.

In addition to Rogovich, the Commonwealth's other chief witness was Steven Murphy. Murphy testified that on the night of the murder, between 9:30 and 10 P.M., Hardy and the defendant came to his house to retrieve a gun, which Murphy had kept for Hardy. Murphy showed Hardy and the defendant how to use the gun, then wiped his fingerprints from it. Approximately two hours later, Allison arrived at Murphy's house and told Murphy that he needed to talk. Allison told Murphy, "We just did [the victim] . . . . Me, Jeff [Hardy], Jerry [Sullivan, the defendant], and Rogie [Rogovich].'' Allison took out the gun that Murphy had given to the defendant and Hardy earlier that evening and placed it onto Murphy's bed. A short time later, the defendant and Hardy arrived at Murphy's house. The defendant asked Allison how much money the victim had, Allison counted the money, divided it among himself, Hardy, and the defendant, and left Murphy's house.

The defendant, then alone with Murphy, admitted that he tried to shoot the victim and the gun jammed. The defendant also told Murphy that "we just jumped on him, started sticking him, stabbing him.'' The defendant also made other inculpatory statements to Murphy.

The victim's body was discovered the next morning, with seventy-nine stab wounds to the head, face, neck, chest, arms, legs, and back, as well as a gunshot wound to the face.

At trial the defendant maintained that he did not, either as principal or joint venturer, shoot, stab, or rob Moran. His defense was that Rogovich, the immunized witness, and Hardy, his codefendant, were the ones who did so. (Hardy had been tried and convicted in an earlier separate trial. *Commonwealth v. Hardy*, 431 Mass. 387 [2000].) The defendant did not testify at trial. He relied on the testimony of friends and John Hardy,

the brother of codefendant Jeffrey Hardy, to support his theory and to impeach the testimony of the two key Commonwealth witnesses, Rogovich and Murphy.

1. *Comments in opening statement and closing argument regarding immunized witness.* In his opening statement, the prosecutor said:

> "Rogovich was forced to testify by the Supreme Judicial Court. The Supreme Judicial Court granted him immunity and held that he testify or be held in contempt and go to jail himself."

The defendant argues that these sentences were improper because they state that Rogovich was forced to testify under a grant of immunity whereas Rogovich was actually eager to obtain immunity in order to shift the blame from himself to others. There was no objection to this statement; thus, we review to determine whether any error created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *O'Brien*, 432 Mass. 578, 590-591 (2000). There was no error. The statement is an accurate description of what immunity means. Pursuant to the statute governing immunity in effect at the time of trial, an order granting immunity entered by a single justice of this court forced the witness to testify. G. L. c. 233, § 20E, inserted by St. 1970, c. 408. See *Matter of a John Doe Grand Jury Investigation*, 405 Mass. 125, 129 (1989).[2] The statement was not improper.

At trial, Rogovich provided damning eyewitness testimony against the defendant. Rogovich also verified the fact that he was testifying pursuant to a grant of immunity. The prosecutor returned in his closing to the theme of Rogovich's immunity:

> "Christopher Rogovich was granted immunity by the

---

[2]At the time of trial, the Supreme Judicial Court was the only court authorized to grant immunity and such grant required the witness to testify before the grand jury. The trial judge could then grant immunity to a witness to testify at trial. See G. L. c. 233, § 20F, inserted by St. 1970, c. 408. This statute was repealed by St. 1998, c. 188, § 5. Pursuant to present immunity provisions, a justice of the Supreme Judicial Court, the Appeals Court, or the Superior Court is authorized to grant immunity to a witness before the grand jury or in certain criminal proceedings in any of those courts. See G. L. c. 233, § 20E (*a*), as appearing in St. 1998, c. 188, § 4.

Supreme Judicial Court and he was forced to testify. 'Now Chris [Rogovich], you're not gonna get by so easily as not being involved and not testifying against your friends. You are going to testify. And the only way you can get in trouble is if you lie.' "

No objection was made to this reference to immunity in the closing argument, but the judge resurrected the issue by fully considering it in ruling on the defendant's motion for a new trial. Thus, we review the issue as if properly preserved. See *Commonwealth* v. *Hallet,* 427 Mass. 552, 554 (1998).

The defense argument apparently is that the statements regarding immunity communicated to the jury unfairly that Rogovich's testimony was reliable either because of an admonition by a Supreme Judicial Court Justice or because the prosecutor possessed some independent knowledge that Rogovich's testimony was truthful. But a fair reading of the argument does not support either conclusion. The prosecutor's statement was simply that the jury could find Rogovich's testimony credible because Rogovich's only concern was a perjury charge. The statement did not imply the prosecutor's independent knowledge of Rogovich's credibility. The Commonwealth was entitled to argue that immunity could be considered by the jury as an indication that Rogovich was telling the truth.

The defendant had argued in turn that there was no basis for believing Rogovich: that immunity guaranteed nothing; that Rogovich was a murderer lying to protect himself and he would not have needed immunity if he were the innocent bystander he claimed to be; and the fact that he would not testify without immunity made his testimony suspect. Thus, the jury were presented both sides of the issue. Each party sought to suggest to the jury how they should treat the issue of Rogovich's credibility in light of the undisputed fact that he had been immunized.

The defendant also argues that the sentences improperly suggest that the Supreme Judicial Court spoke the words in quotation marks to the defendant. The colloquial transformation of what immunity means, while better not said, was not error, at

least in context. It did not communicate to the jury this court's endorsement of Rogovich's testimony.[3]

The defendant claims that the remark was improper because of its similarity to one we recently disapproved in *Commonwealth* v. *Hardy*, 431 Mass. 387, 396 n.7 (2000) (appeal in case of codefendant, Jeffrey Hardy):[4]

> "Was it threats that made Chris Rogovich come forward? The evidence says no. The evidence says that Chris Rogovich only testified at this trial after the Supreme Judicial Court of our Commonwealth said, 'Mr. Rogovich, you are going to testify or you're going to be held in contempt and go to jail, and you'd better not lie. . . . You could be prosecuted for perjury.' "

We concluded that these remarks were improper, but that the judge's thorough instructions "specifically addressed to the improper remarks" rendered them harmless.[5] *Id.* at 397. We said that "most troubling" about the closing statement in the *Hardy* case was that it personalized the immunity proceeding by suggesting that the prosecutor had "special knowledge" for verifying the witness's testimony and that it "attempted to use the authority of this court to vouch for [the witness's] credibility." *Id.* at 396, 397. The instant statement differs from the one in the *Hardy* case because it does not specifically attribute any remarks to the Supreme Judicial Court. There is reference to this court only in regard to forcing Rogovich to testify by granting him immunity, a fact in evidence. By contrast, in the *Hardy* case, the argument postulated that a justice of the Supreme Judicial Court made a statement that may have enhanced the likelihood that Rogovich was telling the truth.

2. *Limitation on cross-examination.* The defendant maintains that his constitutional right to confront Rogovich, the immunized witness, was violated when the judge precluded inquiry into the content of conversations between Rogovich and his attorney

---

[3]The fact that the words appear in the transcript within quotation marks is irrelevant. The text does not indicate that a quotation was intended.

[4]Jeffrey Hardy was tried shortly before this case by the same prosecutor, and his appeal was decided after the instant trial. *Commonwealth* v. *Hardy*, 431 Mass. 387 (2000).

[5]We considered two parts of the prosecutor's closing argument that were improper. *Commonwealth* v. *Hardy, supra* at 396.

regarding the subject of the immunity agreement. A defendant may, as a matter of right, cross-examine a witness about possible biases, prejudices, and motives to lie. *Commonwealth* v. *Ellis*, 432 Mass. 746, 754 (2000). Indeed, a judge has no discretion to bar completely inquiry into the subject of bias. *Commonwealth* v. *Moorer*, 431 Mass. 544, 547 (2000).

The limitation at issue was imposed when defense counsel asked Rogovich: "For all your involvement, all you just testified to, you had orchestrated on your behalf a grant of immunity?" The prosecutor objected; an immediate sidebar conference followed. The judge ultimately ruled that the defense attorney could ask Rogovich "what the role was of his lawyer, if he knows, in the receiving of a grant of immunity," anything the attorney said publicly about it, "whether he [Rogovich] requested a grant of immunity, [and] whether his lawyer, on his behalf or in his presence, requested a grant of immunity," but that counsel could not inquire about private conversations between Rogovich and his attorney.[6]

The defendant contends that his right to cross-examine Rogovich regarding how he came to be immunized, i.e., the conversations between Rogovich's attorney and the assistant district attorney, were improperly excluded. In essence, the defendant argues that the judge did not properly apply the teaching of *Commonwealth* v. *Michel*, 367 Mass. 454 (1975). We said in that case that "[w]hile an attorney's advice to his client on whether to accept the offer of the prosecution may be confidential . . . the attorney's recitation of that offer is not confidential, for necessarily the offer is known to the prosecutor and it is likely to become the basis of a statement for the record in court." *Id.* at 460-461.

The judge ruled that Rogovich could be asked about the role of his attorney in obtaining immunity, whether he or his lawyer requested a grant of immunity, and about anything the attorney said publicly. Although the judge may have defined the privilege too broadly by precluding testimony of all conversation between Rogovich and his attorney, this limitation was harmless, as the

---

[6]The judge's statements are somewhat inconsistent, perhaps because the statements were made at different times during the sidebar discussion.

defense attorney amply explored the entire subject of immunity with Rogovich.

Defense counsel sought to introduce evidence of the immunity agreement to cast doubt on Rogovich's testimony concerning Sullivan's active role in the murder and his assertion that Rogovich was only an innocent observer, and not a participant. Counsel attempted to do so by demonstrating that Rogovich would not have needed protection from prosecution had the events occurred as he had testified. In exploring the issue, the attorney elicited information about the background of the immunity agreement and the circumstances surrounding its adoption.

The attorney was permitted to ask whether Rogovich had requested immunity of his own accord. Rogovich responded that he "let the lawyer handle it." When counsel asked about Rogovich's understanding as to why an immunity agreement was being requested on his behalf, Rogovich gave a nonresponsive answer. The defense did not press the witness for an appropriate response despite the fact that follow-up questions would have been permitted; those questions did not involve conversations between Rogovich and his attorney. The attorney even asked Rogovich why he was worried about being an accessory when he did not take part in any criminal activity. Rogovich responded, without objection, that he was worried "[o]n the advice of counsel I got." Thus, even were we to construe the judge's limitation on cross-examination as overly broad, the defense was allowed to elicit sufficient information about the background of the immunity agreement in an effort to demonstrate the witness's bias.

Moreover, there is no suggestion that trial counsel could not have called Rogovich's attorney as a witness to inquire into that attorney's conversations with the assistant district attorney[7] regarding immunity. Those conversations could not have been subject to the attorney-client privilege, and they would have revealed the communications at the heart of the issue. The defense had an alternative method of eliciting further information about the genesis of the immunity agreement. Cf. *Com-*

---

[7]The immunity discussions were with an assistant district attorney other than the prosecutor.

monwealth v. *DiBenedetto*, 427 Mass. 414, 421 (1998) (attorney-client privilege may be invaded only if shown it is "the only way to get at the information").

3. *Information regarding codefendant's trial.* Jeffrey Hardy also had been convicted of murder in the first degree. Rogovich and Murphy testified for the Commonwealth at that trial. John Hardy had been present during parts of his brother's trial. The defendant contends that the prosecutor improperly introduced information concerning events at Jeffrey Hardy's trial when he asked John Hardy the following question:

> "You heard me tell that jury that all three of them [Sullivan, Allison, and Hardy] began to stab [the victim] and stab him and stab him and stab him; didn't you hear me say that to that jury?"

The defendant objected to this question and requested an instruction. The judge sustained the objection, but did not respond to the request for an instruction. The defendant claims that this question, "in combination with [the jury's knowledge of] the guilty verdict [in the Hardy trial]," interjected damaging extraneous information; constituted impermissible "vouching" because it insinuated that the prosecutor "had special information" that the defendant, Allison, and Hardy were the three murderers; and improperly impeached John Hardy by pretrial silence when he had good reason to keep the information secret until after his brother's trial.

On direct examination, John Hardy testified that Rogovich had told him that he (Rogovich) and Jeffrey Hardy murdered Moran while Sullivan had become "all bug-eyed," "freaked out," and ran back to the car. (In other words, John Hardy's testimony implicated Rogovich, rather than Sullivan.) John Hardy admitted that he had revealed this information to the defendant's trial counsel only days before testifying, and that the only other person with whom he had shared the information was his brother's attorney, shortly after she had been retained. Before cross-examination, the prosecutor requested a sidebar conference seeking permission to inquire of John Hardy regarding his bias against the Commonwealth stemming from the fact that the Commonwealth, and in particular, the same two

prosecutors who were prosecuting the defendant, were responsible for having just convicted John Hardy's brother Jeffrey. As the judge noted, John Hardy's testimony was an "attack on Rogovich's credibility." The Commonwealth's case depended in large part on Rogovich's testimony. After a lengthy conference, the judge ruled that, for the purpose of establishing John Hardy's bias, the prosecutor could ask about his presence in court during the prior trial when the same prosecutors obtained a verdict against his brother, but that the sentence could not be revealed. Defense counsel did not object to this ruling.

On appeal, the defendant maintains that the one question to John Hardy quoted above was improper. The short answer to the defendant's arguments is that the objection to that single question was sustained and the jury had been told explicitly and repeatedly at the outset of trial that questions themselves are not evidence; and that when an objection is sustained they should disregard the question and not speculate about what the answer might have been. We presume that the jury follow the judge's instructions. *Commonwealth* v. *Degro*, 432 Mass. 319, 328 (2000). Thus, the question itself placed nothing before the jury.

Nevertheless, the defendant contends that, although his objection was sustained, the jury were left with an improper prejudicial comment by the prosecutor, and that, to the extent the judge could have mitigated that prejudice, he was asked to give an instruction and refused to do so. As to the claim of a lack of instruction, defense counsel never informed the judge of the type of instruction he was seeking; he did not raise the issue when this witness completed his testimony or at the time of the judge's final instructions. Thus, we review to determine whether there has been error, and if so, whether it created a substantial likelihood of a miscarriage of justice. Contrary to the defendant's contention, the question itself did not contain any "extraneous information," or suggest that the prosecutor possessed any special information. Rogovich had already told the present jury that he saw the defendant, Allison, and Hardy repeatedly stab Moran. Indeed, defense counsel had cross-examined Rogovich in almost identical terms.

Further, the judge took "more than adequate precautions," see *Commonwealth* v. *Murphy*, 426 Mass. 395, 403 (1998), to ensure that the jury would not draw any impermissible infer-

Commonwealth *v.* Sullivan.

ence from the question. The judge instructed the jury when Hardy completed his testimony that whether another person had "been convicted [as a result of] the events in this case . . . would have absolutely nothing to do with the innocence or guilt of this defendant. It may only be considered by you in your assessment of this previous witness's testimony and for no other purpose." The judge gave a similar instruction in his final charge. This one unanswered question, even if inappropriate, could not have created a substantial likelihood of a miscarriage of justice.[8,9]

4. *Failure to hold an evidentiary hearing on motion for a new trial.* The defendant claims that the judge erred when he failed to hold an evidentiary hearing on his motion for a new trial.[10] He argues that such hearing was necessary to determine whether the Commonwealth had entered into an undisclosed agreement with Rogovich in return for his testimony against the defendant or whether immunity was granted in the absence of an agreement. An evidentiary hearing is required if the motion and affidavits raise a substantial issue. Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). Whether a substantial issue has been raised depends on the seriousness of the issue and the adequacy of the defendant's showing, see *Commonwealth* v. *Stewart*, 383 Mass. 253, 257-258 (1981), and the decision to hold an evidentiary hearing on a motion for a new trial is committed to the sound discretion of the trial judge, *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), to which we give substantial deference. *Commonwealth* v. *Britto*, 433 Mass. 596, 608 (2001).

---

[8]The defendant also argues that the question in issue was particularly damaging because the judge permitted the fact that Jeffrey Hardy had been convicted of murder in the first degree to come before the jury. Again, there was no objection to the question regarding Hardy's conviction. The impact of that question could not create a substantial likelihood of a miscarriage of justice. There was no dispute in this case that Moran had been killed and that Jeffrey Hardy had been one of his killers.

[9]The defendant further contends that the question was improper impeachment by pretrial silence. The defendant did not object on this ground. Regardless, a review of the transcript makes it clear that the question was one in a series designed to demonstrate John Hardy's bias. It preceded and was not a part of the questions designed to lay a foundation for impeachment by pretrial silence. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 57-58 (1982); *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 295-296 (1981).

[10]The judge did hold a nonevidentiary hearing on the motion.

A judge may decide issues raised on the basis of memoranda and affidavits of the parties. *Id.*

Here, the judge properly determined that the defendant failed to raise a substantial issue in his motion for a new trial.[11] The defendant's claim is solely speculative: that the Commonwealth may have entered into a clandestine agreement with Rogovich to obtain his testimony against the defendant. The defendant, however, presented no basis for his proposition. In contrast, the Commonwealth filed an affidavit of the assistant district attorney responsible for the case at the time immunity had been sought. The affidavit related:

> "Based on the investigation into this case I made a decision to seek immunity for Christopher Rogovich. *Other than the grant of immunity,* there were no deals, promises or inducements made by the Commonwealth to Christopher Rogovich *prior to his grand jury testimony*" (emphasis added).

As the judge stated, the defendant produced "no evidence either establishing such a material understanding or contradicting the affidavit." And in a later ruling on the defendant's motion for reconsideration, the judge concluded there was "no ambiguity" in the affidavit and it did not "support[] a theory of a secret deal." Moreover, during cross-examination of Rogovich, defense counsel could have inquired about what Rogovich's attorney had said regarding communications from the assistant district attorney. Such communications would not have been privileged. As the judge concluded, the defendant's claim is unsupported by the record and is in contrast to the Commonwealth's affidavit clearly stating that Rogovich received immunity and nothing more. The judge acted within his discretion. See *Commonwealth* v. *Donahue,* 369 Mass. 943, 951, cert. denied, 429 U.S. 833 (1976).

*5. Relief pursuant to G. L. c. 278, § 33E.* After reviewing the

---

[11]The same issue was raised in the defendant's motion for reconsideration, which was denied for the same reason that the original request for an evidentiary hearing was denied.

whole record, we conclude that there is no reason to exercise our power under G. L. c. 278, §  33E.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*